IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JUSTIN AARON VILLARREAL                                                                PLAINTIFF

v.                                    Civil No.  4:23-cv-04099-SOH-BAB

SERGEANT JOSHUA WATSON; and
SERGEANT JAIMOND JOHNSON                                                              DEFENDANTS

**REPORT AND RECOMMENDATION**

This is a civil rights action filed *pro* se by Plaintiff, Justin Aaron Villarreal, under 42 U.S.C. § 1983.  Before the Court is a Motion for Summary Judgment and supporting documents on the limited issue of exhaustion filed by all Defendants.  (ECF Nos. 14, 15, 16).  Plaintiff filed a Response, (ECF Nos. 19, 20), and a Supplement to his Response (ECF No. 22). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

**I. BACKROUND**

Plaintiff is currently incarcerated in the Arkansas Division of Corrections, Delta Regional Unit.  His claims in this action arise from his incarceration at the Southwest Arkansas Community Correctional Center ("SWACC") in July 2023.  At all times relevant to Plaintiff's claims, he was a convicted inmate.  (ECF No. 1, p. 2).

### A. Plaintiff's Claims

In his Complaint, Plaintiff names Sargent Watson and Sargent Johnson, employees of SWACC, as defendants in this matter. (ECF No. 1, p. 2-3). Plaintiff makes three claims against these Defendants. First, in Claim One, Plaintiff claims Defendants both violated his constitutional rights on July 3, 2023 with the use of excessive force. Specifically, Plaintiff alleges:

> On July 3rd 2023 at [approximately] 11:15 pm [Defendant] Watson and [Defendant] Johnson approached me in the dayroom on 4th floor they told me to go to my room, room 431. I did in the room [Defendant] Johnson was talking to me while [Defendant] Watson was behind me. As I was speaking to [Defendant] Johnson, [Defendant] Watson began punching me. [Defendant] Johnson put a handcuff on my left wrist and pulled my arm back he grabbed my other arm and held me in a restraint while [Defendant] Watson continued to punch me. I was placed on the ground and then the handcuff was put on my right wrist. I was then escorted to Intake 104 afterward so I had [a] black eye and bloody nose and a busted lip. I also had a migraine that lasted six days. I was knocked unconscious.

(ECF No. 1, pp. 4-5) (errors in original).

Plaintiff also alleges an official capacity claim under Claim One against Defendants:

> Provision of [a] safe environment use of force will not be presented unless deemed necessary professionalism. Residents Bill of Rights (1, 4 and 17)(15) there is to be a camera and multiple witnesses in the event of an use of force and excessive force will not be used.

*Id.* at 5. (errors in original).

In Claim Two Plaintiff claims, Defendants denied him medical care on July 3, 2023. Specifically, Plaintiff alleges:

> [Defendant] Watson and [Defendant] Johnson had me escorted to intake cell 104. Upon arrival I was thrown in the cell and the handcuffs were removed. I was being taunted by [Defendant] Watson about my eye being black and me wanting medical. He said no and left laughing. [Defendant] Johnson left with him. About 15 minutes went by and [Defendant] Johnson came back and I asked for medical and he said no and left.

*Id.* at 6 (errors in original).

Plaintiff also alleges an official capacity claim within Claim Two, stating:

> Medical care is allowed to all inmates regardless of ability to pay and the level of the persons crime. Residents Bill of Rights . . ..”

*Id*. at 7.

Finally, in Claim Three Plaintiff alleges Defendants falsified their incident reports regarding the use of force and denial of medical care on July 3, 2023. Specifically, Plaintiff states:

> I was given a Cardinal Rule Violation by the facility. [Defendant] Johnsons and [Defendant] Watsons report was attached to it. I saw that both reports were a word for word rendition except for a few things. [Defendant] Johnsons report even had the mistakes of showing where he typed in his name instead of [Defendant] Watson. [Defendant] Watson admitted that he wrote both reports. [Defendant] Jonson admitted that he copy and pasted [Defendant] Watsons report and typed in his name. The admission was on July 17, 2023.

(ECF No. 1, p. 8). The Court interprets Plaintiff's Claim Three as a retaliation claim. Plaintiff also makes an official capacity claim under Claim Three:

> You are not to falsify an official document that is the facilities policy Resident Bill of Rights (18).

*Id*.

For relief, Plaintiff requests both compensatory and punitive damages from Defendants as well as injunctive relief.

### B. Defendants' Motion

In their Motion for Summary Judgment for Failure to Exhaust Administrative Remedies Defendants argue, Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 14). Specifically, Defendants allege Plaintiff failed to satisfy the Arkansas Division of Community Correction ("ACC")[1] grievance procedure. According to Defendants, Plaintiff has only submitted one grievance during

---

[1] SWACC is a unit of the ACC and follows ACC grievance procedures. https://doc.arkansas.gov/community-corrections/office-locations/ (last visited June 26, 2024).

3

his incarceration with the ACC, and this grievance is wholly unrelated to the claims alleged in Plaintiff's Complaint. *Id.* Thus, Plaintiff failed to satisfy the ACC grievance procedure related to his claims asserted here. *Id.* Defendants submitted the ACC grievance procedures which states in pertinent part:

> C. Routine Grievance Process
>    Routine grievances must be processed as follows:
> 1. Step One
>    a. A resident must first attempt to informally resolve complaints, grievances, problems, or incidents by submitting a "Complaint Form for Residents" or discussing the matter with an appropriate person such as a counselor, the Residential Supervisor assigned to his/her housing area, or the Shift Supervisor on duty. Note: This step is NOT required for emergency grievances and allegations of sexual abuse; refer to information below for these situations.
>    b. If the problem has not been resolved informally or no response has been received to the informal complaint, the resident may submit a formal written grievance within 5 days of the occurrence to the Grievance Officer or the Center Supervisor's Designee (Designee) on a "Grievance Form for Residents" (see Form 2) Note: here is NO time limit for filing a grievance about sexual abuse. At this point, the grievance becomes formal and all aspects of the process must be followed.
>    c. The law library must have these forms for resident use: "Complaint Form for Residents" and "Grievance Form for Residents."
>    d. The resident may receive any assistance necessary in completing the "Grievance Form for Residents" without unreasonable delay, by contacting the Grievance Officer or Designee.
>    e. Residents cannot file a grievance on behalf of another resident (see the exception for allegations of sexual abuse).
>    f. The Grievance Officer or Designee must transmit a Grievance Acknowledgement Form (obtained from e-OMIS) to the grievant within five working days after receipt.
>    g. Emergency situations:
>       i. A grievant may declare an emergency situation if he/she believes that by observing the regular time limits for processing he/she would be subject to a substantial risk of personal injury or other serious and irreparable harm to include a substantial risk of imminent sexual abuse.
>       ii. A grievant may indicate the existence of an emergency by marking the box provided on the Grievance Form, and by filing the Grievance Form in the usual manner or by personally delivering it to any officer or employee of the center, who must

     sign the attached Emergency Receipt, give the receipt to the resident, and deliver the Grievance Form without undue delay to the Grievance Officer or Designee, or in his/her absence, to the highest center authority present.
  h. The Grievance Officer or Designee must within 30 Calendar days respond in writing to the grievant, unless the time period to respond has been extended.
  i. All written responses must include a well-reasoned response and an explanation that the grievant is entitled to appeal and instructions on how to appeal.
2. Step Two
  a. Any grievance decision can be appealed to the Center Supervisor through the normal chain of command. The grievant is entitled to appeal the Center Supervisor's decision within 5 days after receipt of the Center Supervisor's decision by using the Resident Appeal form (see the back of Form 3).
  b. Within 30 calendar days, the Deputy Director of Residential Services must review the initial grievance, the Center Supervisor's investigation and response, and the resident's appeal, and if necessary, conduct a separate investigation of the matter and respond to the grievant in writing. The Deputy Director of Residential Services must provide a copy of his/her decision to the appropriate Center Supervisor for filing and notification purposes.
  c. The decision of the Deputy Director of Residential Services is final.

. . .

H. Records
1. Nature. The Grievance Officer must maintain a log containing pertinent information regarding the filing, acknowledgement, and disposition of grievances. The Grievance Officer or Designee must maintain the official individual file for each grievance, which is to contain all pertinent information regarding the grievance, and which must systemically maintain aggregate information regarding the numbers, types, and dispositions. Such records must be preserved for at least 3 years following final disposition of the grievance.

(ECF No. 14-2, pp. 3-7).

Defendants also submitted the sworn Declaration of Syrna Bowers, the Deputy Director of Residential Services at the ACC. (ECF No. 14-1). Ms. Bowers handles the appeals of any grievances filed by residents within the ACC, which Plaintiff was as a resident at SWACC. *Id.* In her Declaration, Ms. Bowers declares under penalty of perjury:

5

> After conferring with the Central Supervisor/Warden of the [SWACC] and my own records, I have confirmed that resident Justin Villarreal . . . did not exhaust any claims related to incidents involving [Defendants] Johnson or Watson from July 3, 2023 or July 17, 2023.

*Id.* at 3. Ms. Bowers goes on to explain the only formal grievance Plaintiff has ever filed was in October 2023, and it relates to needing help with paperwork, envelops, and regular phone calls for a pending federal lawsuit. *Id.*

### C. Plaintiff's Response

In his Response to Defendants' Motion for Summary Judgment, Plaintiff does not dispute the ACC grievance procedure or how to properly exhaust a claim under said policy. He disputes Defendants' contention that he failed to file a grievance related to Defendants' use of force and denial of medical care. (ECF No. 19). Furthermore, in his Supplement to his Response, Plaintiff swears under penalty of perjury he did comply with the ACC grievance procedure, (ECF No. 22). Specifically, Plaintiff states:

> I, plaintiff, Justin Aaron Villarreal, . . . filed a complaint form against ACC Defendants Joshua Watson and Jaimond Johnson on July the 5th of 2023. The respondent was Major Vicki Walker who responded the same day stating and I quote "An Internal Affairs Investigation has been started." I replied with checking the box stating "My complaint has not been resolved and I want to pursue this matter" . . . And filed a grievance the same day also taken by Major Vicki Walker.

(ECF No. 22, p. 1).[2] Finally, Plaintiff requests the Court to gather his material evidence since he was forced to throw away all his material evidence when transferred to the Ouachita River Unit of the Arkansas Division of Corrections. (ECF No. 19, 3).

---

[2] Plaintiff makes additionally factual statements in his Response, but he did not execute that document under penalty of perjury. Therefore, the Court cannot consider those facts for summary judgment purposes. *See Alberts v. Willis*, Civil No. 3:20-CV-3008, 2020 WL 7427215, at *5 (W.D. Ark. Dec. 18, 2020) (citing *Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016) (noting statements that are neither sworn nor made under penalty of perjury may be considered on summary judgment))

6

Moreover, in his Statement of Disputed Facts, Plaintiff disputes Defendants assertion he has only filed one grievance while incarcerated. Instead, Plaintiff states he filed a "complaint form" on "July 5." Major Vicki Walker responded to his "complaint" because SWACC did not have an Administrative Review Officer at that time. Plaintiff indicated he was not satisfied with her response and "started a formal grievance." (ECF No. 20, p. 2). Plaintiff also disputes Defendants assertion he failed to exhaust his administrative remedies. He asserts he did file his grievances with Major Vicki Walker. *Id.*

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

7

for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

### III. DISCUSSION

The PLRA mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a) (held unconstitutional on other grounds). Exhaustion is mandatory. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007),

the Supreme Court explained that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The *Jones* Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The parties do not dispute the ACC grievance procedure, or that a formal grievance in Step Two must be filed to exhaust Plaintiff's administrative remedies under the PLRA. However, there is a material factual dispute over whether Plaintiff complied with such procedure by filing a formal grievance as Step Two of the ACC procedure requires. (ECF No. 16-3, pp. 3-4). Plaintiff swears under penalty of perjury he did file such a grievance on July 5, 2023, (ECF No. 22), and Ms. Bowers swears under penalty of perjury he did not as she has no record of it, (ECF No. 14-1). Neither party has submitted to the summary judgment record the document Plaintiff filed on July 5, 2023.[3] Accordingly, the Court cannot determine, for summary judgment purposes, whether Plaintiff's July 5, 2023, complaint or grievance complied with the ACC grievance policy. This leaves the Court with only two contradictory sworn statements regarding whether Plaintiff filed a formal grievance on July 5, 2023, that satisfies Step Two of the ACC grievance procedure.

Because of this material factual dispute, the Court is unable to determine, at this juncture, whether Plaintiff exhausted his administrative remedies as required by the PLRA. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986) ("at the summary judgment stage the judge's

---

[3] The Court notes Plaintiff's allegation that he was forced to throw away all his paperwork during a transfer to the ADC, (ECF No. 19, p. 3), and that discovery in this matter has been stayed pending the determination of the instant Motion. Accordingly, Plaintiff's request for production of his complaints and grievances were unsuccessful.

9

function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

## IV.  CONCLUSION

For the reasons stated above, I recommend Defendants' Motion for Summary Judgment (ECF No. 14) be **DENIED**.

**Referral Status:**  This case should remain referred.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 10th day of July 2024.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE